**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Leonard Gallagher</u>

     **v.**                         Case No. 08-cv-163-PB
                                         Opinion No. 2009 DNH 048
<u>Michael J. Astrue, Commissioner,</u>
<u>US Social Security Administration</u>

**<u>MEMORANDUM AND ORDER</u>**

Leonard Gallagher has sued the Commissioner of the Social Security Administration ("SSA") in an effort to overturn the Commissioner's denial of his application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Gallagher argues that the presiding Administrative Law Judge ("ALJ") (1) mechanically, and erroneously, applied the age category guidelines; (2) failed to properly assess Gallagher's residual functional capacity ("RFC"); (3) failed to properly formulate a hypothetical question to the vocational expert ("VE"); and (4) failed to comply with his responsibility to ask about conflicts in the VE's testimony. According to Gallagher, the ALJ's failures require that the case be reversed and remanded. The Commissioner objects and moves for an order reaffirming his decision. For the reasons set forth below, I remand this case for further proceedings.

## I. <u>BACKGROUND</u>[1]

### A.   <u>Procedural History</u>

On July, 26, 2006, Gallagher filed applications for a period of disability, DIB, and SSI, with an alleged onset date of April 27, 2006.  <u>Tr.</u> at 107-12, 113-17, 128.  These applications were denied initially and upon reconsideration.  Thereafter, Gallagher requested a hearing, which was held before ALJ Robert S. Klingebiel on October 24, 2007.  <u>Id.</u> at 27.  At the hearing, Gallagher, who was represented by counsel, and a vocational expert testified.  <u>Id.</u> at 27-59.  On November 30, 2007, the ALJ denied Gallagher's claims, finding Gallagher not disabled as defined by the SSA because, although he was unable to perform his past relevant work, he was able to perform other work that existed in significant numbers in the national economy.  <u>Id.</u> at 24-26.  On March 6, 2008, the Decision Review Board informed Gallagher that it was unable to consider his claim and that the ALJ's decision had become the final decision of the Commissioner. <u>Tr.</u> 2-4.

### B.   <u>Gallagher's Education and Work History</u>

Gallagher was born on May 1, 1953.  <u>Id.</u> at 24.  He was 54 years old when the ALJ denied his applications on November 30,

---

[1] The background information is drawn from the Joint Statement of Material Facts submitted by the parties (Doc. No. 10) and the Administrative Record. Citations to the Administrative Record are indicated by "<u>Tr.</u>"

2007.  <u>Id.</u> at 107, 113.  He graduated high school and could speak, read, and write English.  <u>Id.</u> at 35, 120.  His past relevant work experience was as a laborer, custodian, and boiler attendant.  <u>Id.</u> at 122, 144, 159.

**C.   <u>Medical Evidence</u>**

The administrative record contains detailed medical information and diagnoses of Gallagher's physical impairments from 2006 to 2007 by various doctors.  What follows is a summary of the of the medical information contained therein.

Beginning on April 30, 2006, Gallagher made numerous visits to Androscoggin Valley Hospital and Coos County Family Health Services for complaints of shortness of breath, coughing, fatigue, dyspnea, chest pain, and a burning sensation in his chest.  <u>Id.</u> at 199-200, 202, 205-218, 226-27, 242-48.  During this period, Gallagher was diagnosed with dyspnea, leukocytosis of an unclear etiology, chronic obstructive pulmonary disease ("COPD"), cardiomyopathy, and coronary artery disease.  <u>Id.</u> at 147, 199-200, 218, 223-24, 227.  At varying times throughout this period, he was admitted into the hospital, underwent numerous tests, and received prescriptions for drugs including  aspirin, Combient, Nitroglycerine, Gemfibrozil, Prednisone, Wellbutrin, Albuterol, Toprol  <u>Id.</u> at 147, 205-18, 224, 227.  Gallagher was also encouraged to continue taking Lipitor and to stop smoking.  <u>Id.</u> at 199-200.

On July 13 and 14, 2006, Gallagher underwent a cardiac catherization and quadruple coronary artery bypass surgery.  Id. 237-40, 249-63.  On July 17 and 18, 2006 x-ray images of Gallagher's chest revealed mild actelectasis consolidation[2] through both lung bases and a small right pleural effusion[3].  Id. at 249-50.

On August 7, 2006, Dr. Benjamin M. Westbrook saw Gallagher for a follow up visit after his quadruple bypass surgery.  Id. at 220, 273-74.  Upon exam, Dr. Westbrook noted that Gallagher was progressing satisfactorily; asked Gallagher to refrain from smoking; and recommended that Gallagher not return to heavy construction for at least three months.  Id.

On August 30, 2006, Coos County Family Health Services saw Gallagher for a follow up visit, during which Gallagher reported that he was experiencing fatigue and weight loss; felt less discomfort in his chest wall than he did immediately following his surgery; and that his energy was not what it used to be, but was improving.  Id. at 265-66.  Upon exam, Gallagher was diagnosed with coronary artery disease and the residual effects

---

[2]  Actelectasis is decreased or absent air in the entire or part of the lung, with resulting loss of lung volume.  See Stedman's Medical Dictionary, 161 (27th ed. 2000).

[3]  Pleural is the membrane enveloping the lungs.  See Stedman's Medical Dictionary, at 1399. Effusion is characterized by increased fluid in a body cavity.  See id. at 570.

of quadruple bypass surgery, and was prescribed Toprol.  Id.

        In September, October, and December of 2006, Gallagher made visits to Coos County Family Health Services for complaints including chest cavity pain, a mild upper respiratory infection, fatigue, and dyspnea upon exertion.  Id. at 268-69, 271-72, 287-89.  Gallagher was examined and diagnosed with the residual effects of quadruple bypass surgery and hypertriglyceridema, and was prescribed Toprol, Zetia, and Lipitor.  Id. at 268-69, 287-89.  Gallagher was told that he could perform work that involved sitting and shredding paper.  Id. at 271-72

        On November 30, 2006, Dr. Jonathan Jaffe, a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment ("PRFCA"), in which he opined that Gallagher could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight hour workday; sit for about six hours in an eight hour workday; push and pull without any limitations; and had to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  Id. at 275-79.

        On April 4, 2007, Dr. L. Cylus, a non-examining physician with the Commissioner's Office of Medical and Vocational Expertise ("OMVE"), opined that Gallagher's hypertriglyceridemia and distal abdominal aorta were non-severe impairments, and that his coronary artery disease requiring quadruple bypass surgery

-5-

was a severe impairment that did not meet or equal an impairment
contained in Appendix 1, Subpart P of Regulation No. 4 ("the
listings". _Id._ at 294.  Dr. Cylus further opined that Gallagher
could lift and carry up to twenty pounds occasionally and ten
pounds frequently; sit for six hours at a time and for a total of
eight hours in an eight hour workday; stand for two hours at one
time and for a total of four hours in an eight hour workday; walk
for one hour at one time and for a total of two hours in an eight
hour workday; occasionally climb stairs, ramps, ladders, and
scaffolds; continuously balance; frequently stoop, kneel, crouch,
and crawl; occasionally be exposed to unprotected heights;
frequently be exposed to moving mechanical parts, operation of a
motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary
irritants, extreme cold, extreme heat, and vibrations; and shop,
travel without a companion, ambulate without an assistive device,
walk a block at a reasonable pace on rough or uneven surfaces,
use standard public transportation, climb a few steps at a
reasonable pace with the use of a single hand rail, prepare a
meal and feed himself, care for his personal hygiene, and sort,
handle, and use papers and files.  _Id._ at 295-96, 298-300.

On April 5, 2007, Dr. C. Fratto, a non-examining physician
with the Commissioner's OMVE, opined that Gallagher suffered from
possible mild COPD, which was non-severe, and that there was no
objective documentation of a pulmonary cause for Gallagher's

alleged dyspnea.  Id. at 293.

On May 24, 2007, Coos County Family Health Services saw Gallagher, who reported that he felt okay generally and did not get along with people.  Id. at 318-19.  Gallagher was diagnosed with hypertriglyceridemia, and prescribed Metoprolol and Lopid. Id.

On August 16, 2007, Lynn Chauvette, an occupational therapist, completed a Functional Capacity Evaluation of Gallagher, in which she opined that he could perform light work, defined as lifting twenty pounds occasionally and ten pounds frequently, with some abilities in the medium work category, defined as lifting twenty to fifty pounds occasionally and ten to twenty-five pounds frequently; sit frequently; occasionally stand, walk, stoop, kneel, reach forward and above shoulder level, perform activities requiring manual dexterity, and complete stairs; and not perform work that involved balancing or the manipulation of very fine objects at a competitive rate.  Id. at 347-49, 352.  Chauvette recommended that Gallagher explore job opportunities for light work where the primary work position was seated, with bending and kneeling kept to short periods of time with breaks to stand or walk, and no slippery, wet, narrow, elevated or erratically moving surfaces.  Id. at 349.

On September 17, 2007, Coos County Family Health Services saw Gallagher, who complained of fatigue, a lack of endurance,

difficulty balancing, and back pain.  Id. at 325-26.

**D.    Testimony of Plaintiff**

Gallagher, who was represented by counsel, testified at the hearing that he could not work five days per week because he was exhausted.  Id. at 36-37.  He stated that he had undergone successful quadruple bypass heart surgery, as a result of coronary artery disease.  Id. at 42.  Gallagher testified that his stamina did not return to the same level as it was prior to that surgery.  Id. at 42-43.  He stated that he had suffered shortness of breath upon exertion, which made it difficult for him to climb stairs and be on his feet.  Id. at 43.  He testified that he took Lipitor, Toprol, and Zetia to control his cholesterol, as well as nitroglycerine and aspirin for his coronary artery disease.  Id. at 45-47.  Gallagher also testified that his daily activities included preparing meals, taking a shower, walking roughly a mile, doing a few household chores, watching television, and occasionally getting together with family and friends.  Id. at 47-49.

**E.    Testimony of Vocational Expert**

The ALJ asked the VE to consider a worker who is currently 54 years of age, with a high school education, some work that had been done in the boiler tending position that was considered semiskilled, and other unskilled work background; could lift twenty pounds occasionally; could sit, stand, and walk during a

typical day, excluding breaks; and could not be exposed to
extremes of temperature, poor ventilation, fumes, or dust.  Id.
at 52.  The VE testified that such a person could not perform
Gallagher's past relevant work, but that he could perform "pretty
much a full range of light work" including as an assembler of
small products (600 positions in New Hampshire and 750,000
positions nationally); an electronics worker (300 positions in
New Hampshire and 720,000 nationally); and price marker (200
positions in New Hampshire and 450,000 nationally).  Id. at 52-
54.  The VE cited to the DOT as his source for this job
information.  Id. at 53-54.  Upon questioning by Gallagher's
attorney, the VE further testified that these jobs are classified
as light work and if an individual could not walk for two hours
total in an eight hour workday, he could not perform these jobs.
Id. at 55-56.   The VE also noted that the ability to perform
light work, by definition, entails the ability to stand and walk
for six hours in an eight hour workday.  Id. at 55.

     The ALJ then re-examined the VE and sought further
clarification regarding the assembler and electronics worker
positions.  Id. at 56.  The VE testified that these positions are
light jobs primarily because of the lifting requirements and that
the walking requirement of two hours in an eight-hour day is from
the DOT classification of light work.  Id. at 56-57.  The final
exchange that occurred between the ALJ and VE was as follows:

[ALJ] Okay.  So, now, in these jobs, assembler and the
electronics worker, do you feel that if someone were
able to stand and walk a total of six hours in a day,
and that they could, in fact, walk a total of two hours
during a day, but these are short, small distance
walking in a day; in other words, we're talking about
prolonged walking where someone might have to walk for,
say, 15 or 20 minutes at one time, or -- is the walking
relatively short in terms of duration?
[VE] In most settings, there'd be a sit/stand option,
and walking would be for short durations, because
you're -- it's performing bench work in assembly.  So,
the walking is more by definitional requirements for
light work --
[ALJ] Okay.
[VE]  -- than as it would apply to those two positions.

Id. at 57.

## F.   ALJ's Decision

The ALJ conducted the five-step sequential evaluation
process set forth in 20 C.F.R. § 404.1520 to determine whether
Gallagher was disabled.  At step one, the ALJ determined that
Gallagher had not engaged in substantial gainful activity since
his alleged onset date of his disability on April 27, 2006.  Id.
at 18.  At steps two and three, the ALJ determined that Gallagher
had a severe impairment consisting of coronary artery disease,
but that he did not have any impairment or combination of
impairments that met or medically equaled a listing under the
Commission's listings of impairments.  See 20 C.F.R. Pt. 404,
Subpt. P, App. 1.  The ALJ determined at step four that Gallagher
could not return to his past relevant work.  Tr. at 24.  However,
utilizing the testimony of a vocational expert at step five, the
ALJ concluded that Gallagher was not disabled because jobs exist

-10-

in the national economy in significant numbers that Gallagher was
capable of performing in spite of his impairments.  Id. at 25-26.

In making these determinations, the ALJ found that Gallagher
retained the RFC to perform light work involving heavy lifting
twenty pounds occasionally; sitting, standing, and/or walking
during the workday; and no exposure to environments with very
poor ventilation or a high concentration of fumes.  Id. at 20.
The ALJ also found that Gallagher "was 52 years old, which is
defined as an individual closely approaching advanced age, on the
alleged disability onset date."  Id. at 24.


## II. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I am authorized to review the
pleadings submitted by the parties and the transcript of the
administrative record and enter a judgment affirming, modifying,
or reversing the decision of the ALJ.  My review is limited to
determining whether the ALJ used the proper legal standards and
found facts based upon the proper quantum of evidence.  Ward v.
Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); Nguyen v.
Chater, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ's findings of fact are accorded deference as long as
they are supported by substantial evidence.  Ward, 211 F.3d at
655.  Substantial evidence to support the ALJ's factual findings
exist "if a reasonable mind, reviewing the evidence in the record

as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion." Irlanda Ortiz, 955 F.2d at 770. The ALJ's findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the role of this court, to resolve conflicts in the evidence.  Id.


### III.  ANALYSIS

A five-step sequential process is used to determine whether a claimant is disabled within the meaning of the SSA.  See 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on step one through four, but then the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that the claimant can perform. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1982).  In this case, the ALJ, acting for the Commissioner,

found in Gallagher's favor on each of the first four steps, but concluded at the fifth step that there was work that Gallagher could perform and denied his application for benefits.  The ALJ's step five decision was informed by his determination of Gallagher's age and RFC, as well as the testimony of a VE as to jobs in the national economy that Gallagher was capable of performing.

Gallagher argues that the ALJ erred at the fifth step in four ways.  First, Gallagher alleges that the ALJ mechanically and erroneously applied the age category guidelines.  Second, Gallagher challenges the ALJ's RFC determination because he claims that it violates requirements of Social Security Ruling ("SSR") 96-8p.  Third, Gallagher alleges that the ALJ provided the VE with an inaccurate hypothetical that did properly account for his limitations.  Fourth, Gallagher argues that the ALJ erred by failing to inquire about a conflict between the VE's testimony and the Dictionary of Occupational Titles.  Gallagher alleges that these failures require the case to be remanded.  I address each of these alleged errors in turn.

## A.   **Borderline Age Situation**

Gallagher was born on May 1, 1953 and was fifty-four years, seven months old when the ALJ rendered his decision on November 30, 2007.  Gallagher contends that the ALJ erred by failing to consider his borderline age situation, where Gallagher was only

five months from his fifty-fifth birthday.

When the findings relative to a claimant's vocational
factors (i.e., age, education, and work experience), in
combination with the claimant's RFC, coincide with all of a
particular rule under the Medical Vocational Guidelines ("the
Grids"), that rule may be relied upon at step five to direct a
conclusion that a claimant is or is not disabled.  See 20 C.F.R.
Pt. 404, Subpt. P, App. 2, § 200.00.  The regulations separate
persons into three categories by age: "younger person," refers to
individuals under age fifty; "person closely approaching advanced
age," refers to individuals between the ages of fifty and fifty-
four; and "person of advanced age," refers to persons age fifty-
five and older.  See 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-
(e).  Persons of "advanced age" are subject to "special rules" as
such age "significantly affects a person's ability to adjust to
other work." 20 C.F.R. §§ 404.1563(e), 416.963(e).

An individual's age category is what is used when the Grids
are consulted.  However, the regulations make clear that the age
categories should not be applied mechanically in borderline
situations.  See 20 C.F.R. §§ 404.1563(b), 416.963(b).  If an
individual is

> within a few days to a few months of reaching an older
> age category, and using the older age category would
> result in a determination or decision that [the
> individual is] disabled, we will consider whether to
> use the older age category after evaluating the overall
> impact of all the factors of your case.

-14-

Id.  A borderline age situation exists when (1) the claimant is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability.  See Application of the Medical-Vocational Guidelines in Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, *Hearings, Appeals and Litigation Law Manual* (HALLEX) II-5-3-2.  If such a situation exists, it is within the adjudicator's discretion to decide whether it is more appropriate to use the higher age category or the claimant's chronological age.  Id.; see also Crady v. Sec'y of Health & Human Servs., 835 F.2d 617, 622 (6th Cir. 1987).

The First Circuit has not weighed in on either the range of months that place a claimant within the borderline category or whether and the extent to which an ALJ must address the borderline-age issue in a decision or at a hearing.  Although the courts have varied in their interpretation of in what period of time the borderline range falls, "the general consensus is that 'the borderline range falls somewhere around six months from the older age category.'"  Furtado v. Astrue, 2008 WL 2950782, at *10 (D.R.I. Jul. 25, 2008)(quoting Swan v. Barnhart, 2004 WL 1529270, at *9 (D. Me. April 30, 2004)).  Accepting this "general consensus," Gallagher, who was five months from reaching his fifty-fifth birthday when the ALJ reached his decision, was within the borderline range of the advanced age category.  An

individual of advanced age with an RFC for light work is deemed disabled unless he has significant transferable skills.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(c).  Thus, if Gallagher was placed in the advanced age category, because he had an RFC for a limited range of light work and no evident transferable skills, the Grids would have dictated a finding of disabled. Accordingly, although Gallagher was not necessarily entitled to placement in the advanced age category, at a minimum, he was entitled to consideration of his borderline-age status.  See 20 C.F.R. § 416.963(b).

The First Circuit has not addressed the issue of whether an ALJ is required to acknowledge and discuss whether potential borderline cases fall within that category.  Further, it appears that the other circuit and district courts have not reached a consistent conclusion on this issue.  See Bowie v. Comm'r of Soc. Sec., 539 F.3d 395 (6th Cir. 2008)(holding that there is not a per se procedural requirement that an ALJ must address borderline age categorization and explain his thought process in every borderline case);  Daniels v. Apfel, 154 F.3d 1129 (10th Cir. 1998)(holding that the Commissioner has the burden of showing what age category should apply and hearing officers are required to provide a record of their determination regarding 404.1563 requirements); Crawford v. Barnhart, 556 F. Supp. 2d 49 (D.D.C. 2008) (remanding because the ALJ should have recognized a

borderline age situation and explicitly considered the appropriateness of the older age category, even though the ALJ called a vocational expert); <u>Justice v. Astrue</u>, 589 F. Supp. 2d 110 (D. Mass. 2008) (remanding because the hearing officer's decision provided no record of his consideration of the potential borderline age situation).

I find that the ALJ need not explain his determination to use the claimant's chronological age and not apply the older age category. <u>See</u> HALLEX II-5-3-2.  However, the ALJ must provide some indication that he at least considered borderline age categorization in order for the court to adequately determine that the decision was not made "mechanically" in violation of section 404.1563(b).  In the present case, although the ALJ asked the VE to consider an individual currently 54 years of age at the hearing, when determining that Gallagher was an individual closely approaching advanced age in his decision, the ALJ appeared to consider Gallagher's age of 52 on the alleged disability onset date rather than his age at the time of the decision.[4]  <u>See</u> Tr. at 24 (Finding 7).  This apparent mistake on

---

[4] In the present case, Gallagher's age at the date of decision is the relevant age to consider.  For SSI purposes, entitlement to borderline-age consideration is measured as of the date of the ALJ's decision.  <u>See</u> <u>Swan</u>, 2004 WL 1529270, at *9 n.12 (citing <u>Crady v. Sec'y of Health & Human Servs.</u>, 835 F.2d 617, 620 (6th Cir. 1987)).  While for SSD purposes, it is measured from the claimant's date last insured.  <u>See</u> <u>id.</u>  Here, because Gallagher met the insured status requirements of the SSA through December 31, 2011, his age at the date of decision is the

the ALJ's part, in addition to the fact that the ALJ never addressed the borderline-age issue in his decision or at the hearing, makes it impossible to determine whether the ALJ applied section 404.1563(b) and considered the appropriateness of the older age category for Gallagher.  Because the ALJ did not provide any indication that he considered Gallagher's borderline age categorization, I remand this case for proper consideration.

**B.    RFC Determination**

Gallagher alleges that the ALJ's RFC determination violates requirements of SSR 96-8p because it lacks specificity in articulating his sitting, standing, and walking capacities and fails to account for his hand dexterity deficits as limitations.

An RFC finding represents the most an individual can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  The SSA has specified that assessment of RFC must involve a function-by-function consideration of each work-related ability before expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth.  SSR 96-8p, 1996 WL 374184, at *3 (1996); see also Ferraris v. Heckler, 728 F.2d 582, 586-87 (2d Cir. 1984)(holding that the ALJ's findings on a claimant's RFC were insufficient where the ALJ determined the claimant's RFC in a conclusory manner without a function-by-function

---

appropriate age to consider for both SSI and SSD claims, not his age at the date of application or administrative hearing.  See Justice, 576 F.Supp.2d at 203.

-18-

assessment).  In addition, the ALJ must specify the evidentiary
basis for his RFC determination.  SSR 96-8p, 1996 WL 374184, at
*7; see also White v. Sec'y of Health & Human Servs., 910 F.2d
64, 65 (2d Cir. 1990) (noting that an ALJ's failure to specify a
basis for an RFC determination is a sufficient reason to vacate a
decision of the Commissioner).  Furthermore, the ALJ may not
ignore relevant evidence, especially when that evidence supports
the claimant's cause.  See Nguyen, 172 F.3d at 35.

     In this case, Gallagher first claims that the ALJ's RFC
finding is vague and does not relate to any function-by-function
assessment as required by SSR 96-8p.  I disagree.  The ALJ made
the following RFC determination:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work.  He can lift
> 20 pounds occasionally and sit, stand and/or walk
> during the workday. Exposure to environments with very
> poor ventilation and a high concentration of fumes
> should be avoided.

Tr. at 20.  Although this finding does not specify the precise
time limitations on Gallagher's abilities to sit, stand, and
walk, the ALJ discussed these functional abilities in the body of
his opinion.  The ALJ detailed the functional assessments and
opinions of Ms. Chauvette, Dr. Jaffe, and Dr. Cylus,
acknowledging the weight being given to each opinion.  Id. at 22-
23.  Both parties concede that, given the ALJ's discussion, it
can be inferred that the ALJ adopted the opinion of Dr. Cylus and

-19-

the specific functional limitations noted therein.  See Pl.'s
Mot. at 4 ("Given the fact that the ALJ gave 'greater weight' to
Dr. Cylus, it may be safely inferred that he adopted that
consultant's limitations on standing and walking."); Def.'s Mot.
at 11 ("[A]lthough the ALJ did not explicitly describe the
maximum amount of time Plaintiff could stand and walk, the ALJ's
decision establishes that he concluded that Plaintiff could
perform those activities in accordance with Dr. Cylus' opinion .
. . .").  Thus, although the ALJ did not specifically note
Gallagher's functional limitations in his finding, because he
relied on the opinion and functional assessment of Dr. Cylus in
the body of his decision, the ALJ met the requirements of SSR 96-
8p when determining Gallagher's RFC.  See Onishea v. Barnhart,
116 F. App'x 1 (5th Cir. 2004) (ALJ met the legal standard of 96-
8p by basing his RFC assessment, in part, on the state examiner's
function-by-function analysis).

    Next, Gallagher alleges that the ALJ's RFC finding fails to
properly account for the hand dexterity, standing, and walking
limitations detailed in Ms. Chauvette's functional capacity
evaluation.  I disagree with Gallagher.  The ALJ clearly
considered Ms. Chauvette's opinion and specifically noted that he
only gave her report weight "inasmuch as it finds the claimant
able to perform light work."  Tr. at 22-23.  Thus, the ALJ did
not give weight to the specific functional limitations found by

-20-

Ms. Chauvette.  Further, the ALJ's decision not to give weight to Ms. Chauvette's limitation findings was not inappropriate because the findings were inconsistent with other evidence in the record. See 20 C.F.R. § 404.1527.  In particular, Dr. Jaffe and Dr. Cylus found that Gallagher had no manipulative limitations and had greater standing and walking capabilities than found by Ms. Chauvette.  Tr. at 276-78, 296-97.  More notably, Gallagher testified to the ability to do handyman type work, indicated that his heart problem was his only impediment to work, and, in both Function Reports, reported no problems using his hands.  Id. at 35, 44, 140, 172.

For all of the aforementioned reasons, I disagree with the assertions that the ALJ improperly assessed Gallagher's RFC.

**C.   Hypothetical Question to the VE**

As in the present case, the ALJ often meets the step five by relying on the testimony of a vocational expert.

> But in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.  To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.

Arocho v.Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).  Gallagher alleges that the ALJ provided the VE with an inaccurate hypothetical that did not correspond with his

limitations and thus, the VE's testimony provided no support for the ALJ's disability finding at step five.

In this case, the ALJ's clarification of the outputs came in the form of his RFC finding, which, as noted above, incorporated the functional limitations found by Dr. Cylus.  Thus, to be satisfactory, the hypothetical question to the VE also needed to incorporate the functional limitations found by Dr. Cylus.[5]  The ALJ initially asked the VE to consider an individual who, *inter alia*, "is able to, for the most part, sit, and stand, and walk, during a typical day, perhaps excluding a mid-morning break, and a mid-afternoon break, and a lunch break."  Tr. at 52.  This question was undoubtedly too vague and did not incorporate the precise limitations outlined by Dr. Cylus and accepted by the ALJ.  Specifically, this hypothetical fails to include inputs reflecting Gallagher's limitations to standing for two hours at one time and for a total of four hours in an eight hour workday, and walking for one hour at a time and for a total of two hours in an eight hour workday.  However, follow up questions by Gallagher's attorney and re-examination by the ALJ incorporated more limitations for the VE to consider.

---

[5]  Gallagher also argues that the hypothetical question to the VE should incorporate the hand dexterity limitations found by Ms. Chauvette.  However, a hypothetical question need only include impairments and limitations that have been incorporated into an appropriate RFC finding.  Because I have concluded that the ALJ properly excluded Ms. Chauvette's specific findings from his RFC, those limitations need not be reflected into the ALJ's hypothetical question to the VE.

The VE noted that the jobs of assembler of small products, electronics worker, and price marker were all classified as light jobs, which generally require standing and walking six hours in an eight-hour workday.  Id. at 55.  Next, the VE stated that if an individual were unable to walk for two hours they could not perform in these occupations, but then clarified that this limitation was for people who could not walk a total of two hours in an eight-hour day.  Id. at 55-57.  Finally, in response to a question from the ALJ about whether someone who could stand and walk for a total of six hours in a day and walk for a total of two hours during a day for only 15 or 20 minutes at a time could perform the jobs of assembler or electronics worker, the VE responded: "In most settings, there'd be a sit/stand option, and walking would be for short durations, because you're – it's performing bench work in assembly.  So, the walking is more by definitional requirements for light work  . . . than as it would apply to those two positions."  Id. at 57.

The Commissioner argues that this last exchange incorporates Gallagher's walking limitations and that although the ALJ never clarified Gallagher's precise time limitations on standing, this is not reversible error because the VE noted that the identified jobs had a sit/stand option in most settings.  See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (holding that ALJ's failure to discuss limitations was not reversible error

-23-

because the limitation would not affect the claimant's ability to perform one of the jobs identified by the VE).  However, I agree with Gallagher that the examination of the VE left the issue of the walking and standing abilities required for the jobs in question confused and that the VE's final response was equivocal.  Thus, it is not clear that the jobs identified at step five do not require the performance of tasks exceeding Gallagher's limitations as found in his RFC and the VE's testimony cannot be relied upon to meet the Commissioner's step five burden.  A remand is necessary to clarify the VE's testimony.

D.    **Variance between VE Testimony and DOT**

Gallagher also argues that remand is required because of a conflict between the DOT and the VE's testimony.  More specifically, Gallagher argues that the VE's testimony relating to sitting, standing, and walking limitations for these jobs conflicted with the DOT listings and that SSR 00-4p required the ALJ to inquire about the conflicting information he received, and explain how he resolved the inconsistencies.  See SSR 00-4p, 2000 WL 1898704, at *2.  However, the ALJ provided no such explanation because he found the VE's testimony to be consistent with the information contained in the DOT.  Tr. at 25.  Because I find remand is necessary to clarify the VE's testimony, I need not address this issue.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, I grant in part Gallagher's motion to reverse (Doc. No. 8), deny the Commissioner's motion to affirm (Doc. No. 9), and pursuant to sentence four of 42 U.S.C. § 405(g), remand this case to the Social Security Administration. The clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

April 3, 2009

cc:  Seth Aframe, Esq.
     Karen Fitzmaurice, Esq.
     Francis M. Jackson, Esq.